IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BENJAMIN CARTER,

    Plaintiff,

v.                                                       Civil Action No. 3:23cv808

LT. K. RICHARDSON,

    Defendant.

## MEMORANDUM OPINION

Benjamin Carter, a former Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Amended Complaint (ECF No. 22) and the Motion to Dismiss filed by Defendant Richardson. (ECF No. 24.) Defendant Richardson and the Court provided Carter with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 24-1, 27.) Nevertheless, Carter filed no response to the Motion to Dismiss.[2] For the reasons stated below, the Motion to Dismiss (ECF No. 24) will be GRANTED in part and DENIED in part.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Inexplicably, Carter filed a Motion for Summary Judgment (ECF. No. 30) instead and then an "Opposition to Motion for Summary Judgment" (ECF No. 34), even though Defendant Richardson has not filed a motion for summary judgment. However, as explained in Part IV, Carter's Motion for Summary Judgment will be denied. Moreover, because the matter is before the Court on Defendant Richardson's Motion to Dismiss, the Court cannot review the affidavit that Carter submitted in support of the "Opposition to Motion for Summary Judgment." Rather,

## I. Preliminary Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads

---

at this juncture, the Court is tasked with reviewing the sufficiency of the Amended Complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Summary of Allegations and Claims

In his Amended Complaint, Carter names as the sole Defendant, Lt. Kyle Richardson, a lieutenant at Sussex I State Prison. (ECF No. 22, at 1.) Carter alleges as follows:[3]

> 1. I was placed in the custody of the Virginia Dep't of Corrections ("VDOC") in June of 2018 w/ the serious medical respiratory disability I have had my whole life, asthma.
> 2. On July 18, 2019, VDOC medical professionals put the order in my medical file and alerted staff in security that the offender ("Carter") has a respiratory condition of asthma and no chemicals can be used as a form of use of force. (LEGAL DUTY)
> 3. Upon transfer to each new VDOC facility, my medical file is reviewed by medical staff, and medical personnel alerts security that Carter has asthma, and that no chemicals can be used as a form of use of force.
> 4. I was transferred to [Sussex I State Prison] SISP in August 2021, in which my medical file was reviewed by SISP medical staff and security was alerted

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis, underlining, and citations to exhibits in the quotations from Carter's submissions. The Court notes that Carter has significantly augmented the facts in support of his claims from his original Complaint.

3

of all my medical orders per RNCB Taylor at SISP including my "no chemicals can be used" order for my asthma.

5. On December 6, 2022, Carter was housed at SISP in Housing Unit ("HU") 3A-22, when OC chemicals were deployed at 3A-17, 4 (four) cells down from Carter, where he began immediately choking, having a[n] asthma attack, coughing uncontrollably from the OC chemicals deployed.

6. The OC chemical agents carried through the HU 3A ventilation system and recycled the air causing Carter to suffer the effects of OC chemical agents all over his body, as he sneezed and gagged in pain locked in his cell nondisruptive.

7. As Carter suffered, the inmates in the housing area began to yell for Richardson ("Lt.") to get Carter medical treatment down in cell 22, as Carter had an emergency grievance ready to turn in.

8. Richardson then walked down the tier of cells Carter was on, and Lt. said, "You got COVID," in a joking manner, as he humiliated Carter sneezing, and choking, having an asthma attack suffering in pain, and need for medical treatment to decontaminate the harmful chemical effects of a person.

9. Carter was waving the emergency grievance out of the side crack of the door for Lt., but Lt. deliberately denied to help get Carter treated as he watched Carter suffer, and Lt. took cell 3A-17 (inmate) to get medical treatment (decontamination), but not Carter.

10. Carter never was able to receive any form of treatment for the OC chemical agents he was exposed to in HU-3A that day and had to suffer for hours until the ventilation system had filtered out the toxic airborne agent that night, however, medical staff did inform, "asthma."

11. The next day, on December 7, 2022, Carter was engaged in a physical fist fight w/ another inmate when Lt. deployed OC chemical agents on him against medical orders not to and was informed the day prior by medical staff that Carter was a "asthma" patient. (BREACH OF DUTY).

12. After Lt. sprayed Carter w/ the OC chemicals, Carter then immediately effecting the initial point of contact, which was the face, for Carter being subjected to a full blast directly in Carter's right eye, cheek, and forehead areas.

13. Carter then began yelling, "AAHH!" and walked toward his cell coughing, choking, gagging, and sneezing simultaneously burning all over his face and neck area at this point in pain, and he began running towards his cell.

14. SISP officials that were not medical care professionals rushed into HU-3A w/ Lt., and Lt. ordered Carter to go in the shower as his Sargeant ("Sgt.") handcuffed and escorted Carter to the shower.

15. Carter began to beg to Lt. to let him get a mandatory cold decontamination of water to treat the OC chemical agents burning and respiratory effects of causing pain, discomfort, shortness of breath, as he simultaneously sneezed, and was blinded by the visions lost, but Lt. refused to give Carter the cold decontamination as he and Carter argued about the showers in HU-3A not having a cold water outlet because they're hot water automated showers.

4

16. Carter complained to Lt. that the hot water would only make it worse but Lt. denied Carter's verbal request for medical care, and had Carter locked into a shower w/ running hot water in a cement cubicle, no bigger than half the size of Carter's roughly 70 sq. ft. cell, building moisture and humidity as the temperature increased intensively collecting steam, causing Carter to begin to choke, cough, sneeze, gag, and burn more aggressively inflamed and shorter breaths allowed in pain, losing conscious.

17. Carter's open cut wounds over his back began to become contaminated w/ the OC chemical agents and bleed heavier and swell his knee's open wound bite from the other inmate simultaneously as the hot water inflamed the OC chemical agents to spread from only Carter's face, neck area to contaminating the air ventilation circumventing in the heated cubicle shower in its entirety.

18. As the OC chemicals contaminated the entire cubicle space, Carter's breaths became shorter, and harder to breathe for him, and believing he was about to die, Carter weakening and suffering, trying to breathe, collapsed after his severe asthma attack on his respiratory system from being forced into the cubicle shower with hot water running non-stop for three (3) hours by Lt., and then denying Carter medical attention for the open cuts across his back and bite wound on his left knee.

19. Carter was awaken to Lt. and John Doe(s) yelling "get up" to him on the shower's floor unconscious.

20. Carter refused to get up in pain and burning requesting for his cut wounds all over his back burning him w/ OC chemical agents infecting his entire body to Lt. and John Doe(s) to be treated and prevent further harm, but Lt. denied to get him medical care at all and ordered (forced) Carter to go back to his cell once the security search of his belongings were done in HU-3A cell 22.

21. Despite the pain and need for medical care, Carter complied with Lt.'s orders and struggled to get (walk) back to his cell (3A-22) w/ Lt. and John Doe escorting him in handcuffs as his back's open wounds were actively bleeding still inflamed with chemical agents.

22. Once placed back in his cell 3A-22, Lt. noticed the active bleeding on Carter's back, he jokingly said to fill out an emergency grievance, so Carter did and Lt. signed the receipt and this way Carter was assured to get medical care [per VDOC policy] (LEGAL DUTY) . . . which states "The Offender must receive a response to an emergency grievance within eight hours of receipt or less . . . ."

23. Lt. failed to turn my emergency grievance in [per VDOC policy] as mandated, maliciously and purposefully even having witnessed my actively bleeding back wounds himself. (BREACH OF DUTY).

24. Carter then was subjected to pains and sufferings of OC chemicals burning his entire body, neck, genitals, and eyes making it extremely hard to even open his eyes, locked in the cell (3A-22) actively bleeding all night worsening from no medical treatment because Lt. deliberately denied Carter medical treatment.

25. Carter then filed a host of written medical request (Dec. 7th, Dec. 8th, 2022) and made verbal request to be treated immediately for the burning pains of OC chemicals, and the inflamed open flesh wounds contaminated w/ OC chemicals over his back and his knee, but medical care staff at SISP said that Lt.

5

> never told them he used force, or that Carter needed to be treated for his open, obvious wounds that were seen and caused on December 7, 2022.
>
> 26. Carter suffered roughly eleven (11) days locked in cell 3A-22, the adverse reactions of the OC chemical agents continuing to burn his eyes, face, neck, body and genital area as his back wounds began to worsen infected w/o medical care and bite wound wasn't able to heal to be treated, leaving Carter w/ huge scabs and scars that are now permanent due to not getting any medical treatment as a direct cause of Lt.'s deliberate indifference.

(ECF No. 22, at 1–10.) Carter raises the following "Legal Claims" (ECF No. 1, at 8):

> Claim One: "On December 6, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering the painful effects of OC chemicals used 4 cells down . . . and Carter began to have an asthma attack, burning physically all over . . . for roughly fifteen (15) hours which constitutes deliberate indifference in violation of the Eighth (8th) Amendment. . . ."[4] (ECF No. 22, at 11.)
>
> Claim Two: "On December 7, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering of the obvious OC chemical agents burning his entire body, that infected the big obvious cuts across his back (roughly five (5) cuts approx. 6 inches long . . .) that were actively bleeding for roughly 3 days and continuing to burn physically for 11 days locked in his cell (3A-22) and constitutes deliberate indifference in violation of the 8th Amendment . . ." (ECF No. 22, at 11–12.)
>
> Claim Three: "On December 7, 2022, [Defendant Richardson] acted w/ negligence by deploying OC chemical agents on Carter against medical orders not to use chemicals because Carter suffered a serious respiratory disorder of severe asthma and caused Carter to have a life-threatening asthma attack . . . which constitutes a state law claim of negligence . . . ." (ECF No. 22, at 12.)
>
> Claim Four: "On December 7, 2022, [Defendant Richardson] acted w/ negligence by failing to submit Carter's emergency grievance" pursuant to VDOC policy "requesting immediate care to treat the OC chemicals and open wound injuries causing Carter to be subjected to severe burning all over and asthma attacks along w/ infected back wound that left permanent scars and Carter had no help or medical care for 11 days . . . which constitutes a state law claim of negligence." (ECF No. 22, at 12–13.)

Carter asks for monetary and declaratory relief. (ECF No. 22, at 13–15.)

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

## III. Analysis

### A. Eighth Amendment Standard

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168

7

(citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### B. Claim One (December 6, 2022 Incident)

In Claim One, Carter contends that "[o]n December 6, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering the painful effects of OC chemicals used 4 cells down . . . and Carter began to have an asthma attack, burning physically all over . . . for roughly fifteen (15) hours which constitutes deliberate indifference in violation of the Eighth (8th) Amendment. . . ." (ECF No. 22, at 11.) Carter contends that because he purportedly had a medical order in his file not to use chemical agents on him, that when chemical agents were used four cells over, Defendant Richardson should have known of this order and should have recognized an excessive risk of harm to Carter. However, that is a leap too far. Carter indicates that "the OC chemical agents carried through the HU 3A ventilation system and recycled the air causing Carter to suffer the effects of OC chemicals all over his body, as he sneezed and gagged in pain locked in his cell non-disruptive." (ECF No. 22, at 3.) In addition to sneezing and gagging, Carter indicates that he was coughing uncontrollably. (ECF No. 22, at 3.)

Carter fails to allege facts that would plausibly suggest that he suffered a serious medical need at the time. Indeed, Carter alleges no lasting harm from the incident on December 6, 2022. At best, he contends that he "never was able to receive any form of treatment for the OC chemical agents he was exposed to in HU-3A that day and had to suffer for hours until the

8

ventilation system had filtered out the toxic airborne agent that night . . . ." (ECF No. 22, at 4.) Carter fails to satisfy the objective prong of the inquiry, that he was suffering an objectively serious medical need, and for this reason alone Claim One can be dismissed.

Moreover, Carter fails to allege facts indicating that Defendant Richardson knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The chemical spray was not used on Carter or in Carter's cell but was deployed four cells over. According to Carter, in response to Carter's physical symptoms and complaints, Defendant Richardson asked Carter if he had COVID. (*Id.*) Richardson's question about whether Carter had COVID, showed that he did not subjectively recognize a substantial risk of harm to Carter. Moreover, Carter fails to allege facts that would show that Defendant Richardson knew that Carter suffered from asthma, or that based on his outward symptoms, that Carter had a serious medical need. Rather, Defendant Richardson could reasonably believe that Carter's reaction was from the chemical agents working their way out through the ventilation system. Thus, Carter fails to allege that Defendant Richardson knew of and disregarded a substantial risk of harm to Carter on December 6, 2022. Accordingly, Carter fails to allege an Eighth Amendment claim and Claim One will be DISMISSED WITH PREJUDICE.

### C. Claim Two (December 7, 2022 Incident)

In Claim Two, Carter argues that "[o]n December 7, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering of the obvious OC chemical agents burning his entire body, that infected the big obvious cuts across his back (roughly five (5) cuts approx. 6 inches long . . .) that were actively bleeding for roughly 3 days and continuing to burn physically for 11 days locked in his cell (3A-22) and constitutes deliberate indifference in violation of the 8th Amendment . . ." (ECF No. 22, at 11–12.) Thus, in his statement of his

9

"Legal Claims," Carter specifically limited his claim to the fact that Defendant Richardson denied Carter medical care after the decontamination shower.[5]

As background, Carter admits that on December 7, 2022, he engaged in a "physical fist fight" with another inmate, and it was broken up by Defendant Richardson and other officers by the deployment of chemical agents on his "right eye, cheek, and forehead." (ECF No. 22, at 4–5.) Defendant Richardson then directed officers to take Carter to the shower to be decontaminated. (ECF No. 22, at 5.) Carter contends that while he was in the decontamination shower, the water was hot, and according to Carter, chemicals became airborne causing him to have an asthma attack and he "los[t] conscious." (ECF No. 22, at 6.)[6] Carter indicates that after the decontamination shower, Defendant Richardson and another deputy instructed him to get up and took him back to his cell. (ECF No. 1, at 5.) Pertinent to Claim Two, Defendant Richardson then denied him medical care for the "obvious OC chemical agents burning his entire body that

---

[5] Claim Two does not allege that Defendant Richardson violated his constitutional rights with respect to the use of pepper spray or the use of the decontamination shower where Carter contends that he had an asthma attack. Rather, Carter's claim about the use of a chemical agent and collapsing in the shower from an asthma attack is only alleged as a claim of state law negligence in Claim Three. (*See* ECF No. 22, at 12.)

Moreover, Carter complains that he was taken to a hot shower by unidentified officers when he wanted a cold shower. Defendant Richardson construes Carter to argue that Defendant Richardson was deliberately indifferent to his serious medical needs because Carter wanted to be placed in a cold shower, not a hot shower. But this is not the claim that Carter raised. *Cf. Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021) (explaining that as Plaintiff, Carter "is the master of his complaint" and "determines the claims . . . to bring" (citations omitted)); *Wyatt v. Sussex Surry, LLC*, 482 F. Supp. 2d 740, 744 (E.D. Va. 2007) (explaining that "[t]he well-pleaded complaint rule limits the district court's inquiry to the face of the complaint, recognizing that the plaintiff is the 'master of the complaint.'" (quoting *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004)). Even if Defendant Richardson was involved in the decision to place Carter in a hot shower, he fails to allege facts that Defendant Richardson knew of and disregarded a serious risk of harm by placing Carter in a hot shower to decontaminate.

[6] Defendant concedes that Carter having a severe asthma attack to the point that he allegedly collapsed on the floor could objectively be a serious medical condition. However, that is not what Carter raises in the Claim Two.

10

infected the big obvious open cuts across his back . . . that were actively bleeding . . . ." (ECF No. 22, at 12.)

Carter also contends that he submitted an emergency grievance, presumably after he was put back in his cell, and "[Defendant Richardson] signed the receipt and this way Carter was assured to get medical care [per VDOC policy]." (ECF No. 22, at 8–9.) From Carter's allegations, Defendant Richardson's only involvement after the decontamination shower was to place Carter back in his cell and taking and receipting the emergency grievance.[7]

At this juncture, the Court is constrained to find that Carter has adequately alleged facts that would suggest that Defendant Richardson knew of and disregarded a substantial risk of serious harm to Carter by not obtaining immediate medical care for Carter for the cuts on his back and the residual burning from chemical agents after being removed from the contamination shower. Accordingly, the Motion to Dismiss will be DENIED with respect to Claim Two.

---

[7] Carter's claim about the emergency grievance is the subject of Claim Four and only alleges negligence. (*See* ECF No. 1 2–13.) While Carter faults Defendant Richardson because he was not seen my medical for eleven days, Carter fails to allege any facts indicating that Defendant Richardson was personally involved in any purported denial of medical care, beyond placing Carter back in his cell on the date of the fight.

At most, Carter contends that unidentified "medical care staff" stated that "Lt. never told them he used force, or that Carter needed to be treated for his open, obvious wounds." (ECF No. 22, at 10.) Carter claims that he "filed a host of written medical request (Dec. 7th, Dec. 8th, 2022) and made verbal requests to be treated immediately for the burning pains of OC chemicals, and the inflamed open flesh wounds contaminated w/ OC chemicals over his back and his knee . . . ." (ECF No. 22, at 10.) However, Carter fails to allege facts that Defendant Richardson was personally involved at this point. Carter's suggestion that Defendant Richardson caused him to not receive medical care for eleven days "is no more than [a] conclusion[], [and is] not entitled to the assumption of truth.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (explain that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus, to the extent that Carter intends to allege an Eighth Amendment claim for denial of medical care beyond returning Carter to his cell without medical care, he fails to state a claim for relief.

### D. **Claims Three and Four (State Law Negligence)**

In Claim Three, Carter contends that: "On December 7, 2022, [Defendant Richardson] acted w/ negligence by deploying OC chemical agents on Carter against medical orders not to use chemicals because Carter suffered a serious respiratory disorder of severe asthma and caused Carter to have a life-threatening asthma attack . . . which constitutes a state law claim of negligence . . . ." (ECF No. 22, at 12.)

"The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Medical, Inc.*, 179 F.3d 154, 157 (4th Cir. 1999) (citation omitted). To avoid being found negligent, that standard of conduct "is that of a reasonable man [or woman] under like circumstances." *Id.* at 158 (citation omitted). As discussed below, Carter fails to show that Defendant Richardson was negligent.[8]

---

[8] Virginia recognizes three degrees of negligence: (1) simple or ordinary negligence; (2) gross negligence; and, (3) willful or wanton negligence. *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). Based on the evidence presented, the finder of fact determines the appropriate level of negligence after the parties have conducted discovery, on a motion for summary judgment, or during trial. *Wilby v. Gostel*, 578 S.E.2d 796, 800–01 (Va. 2004). Only when "reasonable minds could not differ," should these issues be decided by the Court. *Poliquin v. Daniels*, 486 S.E.2d 530, 534 (Va. 1997) (citation omitted). Carter does not allege any facts that would plausibly suggest that Defendant Richardson was grossly or willfully and wantonly negligent. Gross negligence is "action which shows indifference to others, disregarding prudence to the level that the safety of other is completely neglected. [Such] negligence . . . shocks fair minded people . . . ." *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997) (citing *Griffin v. Shively*, 315 S.E.2d 210, 212–13 (Va. 1984)). Willful and wanton negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (quoting *Griffin*, 315 S.E.2d at 213). Willful and wanton negligence "generally involves some type of egregious conduct—conduct going beyond what shocks fair-minded people." *Id.* at 102. None of the conduct Carter alleges Defendant Richardson engaged in would shock fair-minded people or involves egregious conduct. Thus, the Court construes Carter to allege a claim of ordinary negligence.

With respect to Claim Three, Defendant Richardson's use of OC chemical spray resulted directly from Carter's involvement in a physical fight with another inmate. Carter fails to allege any facts that would plausibly suggest that Defendant Richardson had a legal duty toward Carter that he breached by using the OC chemical spray to stop a violent fight. Carter fails to plausibly allege that Defendant Richardson was aware that Carter had asthma or that he would have an asthma attack from being sprayed with OC chemicals when he deployed the spray. Rather, Carter cannot show that Defendant Richardson failed to use the degree of care that a reasonable person would exercise under like circumstances to avoid injury to Carter. *See Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003). Instead, any reasonable person would have used OC chemicals to break up a violent fight between inmates that involved a knife or other weapon. Therefore, Carter fails to allege that Defendant Richardson breached a legal duty to Carter. In sum, Carter does not make out a claim that Defendant Richardson was negligent. Accordingly, Claim Three will be DISMISSED WITH PREJUDICE.

In Claim Four, Carter alleges that: "On December 7, 2022, [Defendant Richardson] acted w/ negligence by failing to submit Carter's emergency grievance" pursuant to VDOC policy "requesting immediate care to treat the OC chemicals and open wound injuries causing Carter to be subjected to severe burning all over and asthma attacks along w/ infected back wound that left permanent scars and Carter had no help or medical care for 11 days . . . which constitutes a state law claim of negligence." (ECF No. 22, at 12–13.) Carter's allegations are no more than "naked assertion[s]" that do not "permit the court to infer more than the mere possibility of misconduct," and therefore cannot support a negligence claim. *Ashcroft*, 556 U.S. at 678–79. First, Carter alleges that Defendant Richardson, despite taking and receipting Carter's emergency grievance,

failed to submit it to some unidentified institutional staff. This allegation, at best, is too speculative and conclusory and does not entitle Carter to relief.

Carter also fails to show that Defendant Richardson had a "specific legal duty" to him, or that Defendant Richardson's purported breach of that legal duty proximately caused Carter's injuries. Rather, Carter was injured by the fight with another inmate and the use of OC chemical spray, not by Defendant Richardson's purported failure to turn in an emergency grievance. Thus, Defendant Richardson's purported failure to turn in an emergency grievance was not the proximate cause of Carter's injuries.

Further, as explained previously, Defendant Richardson's involvement with Carter ended with placing him in a cell and taking the emergency grievance. However, Carter contends that unidentified "medical care staff" stated that "Lt. never told them he used force, or that Carter needed to be treated for his open, obvious wounds." (ECF No. 22, at 10.) Carter claims that he "filed a host of written medical request (Dec. 7th, Dec. 8th, 2022) and made verbal requests to be treated immediately," but Carter fails to allege facts that Defendant Richardson was personally involved at this point. Carter does not allege that he made these requests to Defendant Richardson and a fair inference would be that Carter made these requests to other staff members. Carter's suggestion that Defendant Richardson caused him to not receive medical care for eleven days "is no more than [a] conclusion[], [and is] not entitled to the assumption of truth.'" *Francis*, 588 F.3d at 193 (citation omitted). Carter fails to show that Defendant Richardson was negligent and Claim Four will be DISMISSED WITH PREJUDICE.[9]

---

[9] Defendant Richardson also raises the defense of sovereign immunity to Carter's negligence claims. Indeed, "[t]he doctrine of sovereign immunity protects the state from liability for claims of negligence asserted against it." *Coppage v. Mann*, 906 F. Supp. 1025, 1047 (E.D. Va. 1995). "Because a state acts through its employees, the sovereign immunity doctrine extends to public employees as well." *Id.* Thus, in Virginia, individuals who work for an immune government entity, such as a state agency like the VDOC, "may invoke the Commonwealth's

## IV. Carter's Motion for Summary Judgment Will be Denied

Carter also filed a Motion for Summary Judgment and a Memorandum in Support that is a mere two pages. (ECF No. 30, 31.) Carter's submissions fail to comply with this Court's Local Rules. Local Rule 56(B) provides:

> **(B) Summary Judgment – Listing Of Undisputed Facts:** Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party *contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed.* A brief in response to such a motion shall include a specifically

---

sovereign immunity with respect to claims of simple negligence so long as the challenged conduct consisted of 'acts of judgment and discretion which are necessary to the performance of [essential] governmental function[s].'" *Riddick v. Watson*, 503 F. Supp. 3d 399, 426 (E.D. Va. 2020) (alterations in original) (quoting *Heider v. Clemons*, 400 S.E.2d 190, 191 (Va. 1991)). Although, under the Virginia Tort Claims Act, the Commonwealth has "waived its immunity from negligence suits against the Commonwealth itself, it has explicitly retained 'the individual immunity of . . . public officers, their agents and employees from tort claims for damages . . . .'" *Coppage*, 906 F. Supp. at 1047 (quoting Va. Code Ann. § 8.01-195.3).

The Supreme Court of Virginia has set out a four-factor "test to determine entitlement to immunity." *Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984). Accordingly, a court must consider: (1) "the nature of the function performed by the employee," (2) "the extent of the state's interest and involvement in the function," (3) "the degree of control and direction exercised by the state over the employee," and (4) "whether the act complained of involved the use of judgment and discretion." *Id.* (citation omitted)). Here, the applicability of sovereign immunity, "as is often the case, turns on the fourth factor — whether the challenged acts involved the use of judgment and discretion." *Riddick*, 503 F. Supp. 3d at 426; *see, e.g., Dowdy v. Pamunkey Regional Jail Auth.*, No. 3:14–cv–003–JAG, 2014 WL 2002227, at *4 (E.D. Va. May 15, 2014) (noting that "whether the employee's actions 'involved judgment and discretion'" is "typically dispositive").

In this case, the first three factors favor a finding of immunity for Defendant Richardson. The function performed by Defendant Richardson, supervising and managing inmates such as Carter, "falls cleanly within the governmental function of housing and properly operating [prisons]." *Myrick v. NaphCare, Inc.*, No. 3:16–cv–000952–JAG, 2017 WL 3234384, at *2 (E.D. Va. July 31, 2017). With respect to the second and third factor, Virginia has a strong interest and involvement in the administration of its prisons, and a great interest in and control over this function. *See id.* With respect to the fourth factor, Defendant Richardson's actions in deploying OC chemical spray to inmates involved in a volent physical fight, and allegedly not turning in a grievance, involved judgment and discretion, which support a finding of immunity. Accordingly, even if Carter had sufficiently stated a claim of ordinary negligence, which he has not, sovereign immunity would protect Defendant Richardson in Claims Three and Four. *Cf. id.* at *2–3 (finding officers protected by sovereign immunity for negligence claim where they ignored a doctor's order or emergency transport, because they "exercised discretion and judgment in determining how to appropriately handle [the inmate's] medical situation")

15

captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added). Carter's Motion for Summary Judgment wholly fails to comply with the above Rule. Carter has no section of undisputed facts, and he also failed to cite "the parts of the record relied on to support the listed facts as alleged to be undisputed." E.D. Va. Loc. Civ. R. 56(B). Accordingly, Carter's Motion for Summary Judgment (ECF No. 30) will be DENIED. In addition, because the Motion for Summary Judgment will be denied, the Motion for Extension of Time to File a Response/Reply to Carter's Motion for Summary Judgment (ECF No. 33) will be DENIED as moot.

## V. Conclusion

The Motion to Dismiss will be GRANTED with respect to Claims One, Three, and Four. Claims One, Three, and Four will be DISMISSED for failure to state a claim. The Motion to Dismiss will be DENIED with respect to Claim Two. Carter's Motion for Summary Judgment (ECF No. 30) will be DENIED, and Motion for Extension of Time to File Response/Reply to Carter's Motion for Summary Judgment (ECF No. 33) will be DENIED as moot.

An appropriate Order will accompany this Memorandum Opinion.

Date: 07/07/2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

16