IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BENJAMIN CARTER,

       Plaintiff,

v.                                      Civil Action No. 3:23cv808

LT. K. RICHARDSON,

       Defendant.

## MEMORANDUM OPINION

Benjamin Carter, a Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Amended Complaint ("Complaint," ECF No. 22) and the Motion for Summary Judgment filed by Defendant Richardson. (ECF No. 41.)[2] The Court provided Carter with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 45.) Carter filed a Response in Opposition. (ECF No. 50.) For the reasons stated below, the Motion for Summary Judgment will be GRANTED.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

## I. Procedural History and Remaining Claim

In his Complaint, Carter names as the sole Defendant, Lt. Kyle Richardson, a lieutenant at Sussex I State Prison. (ECF No. 22, at 1.) Carter raised the following "Legal Claims" (ECF No. 22, at 11):

Claim One:   "On December 6, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering the painful effects of OC chemicals used 4 cells down . . . and Carter began to have an asthma attack, burning physically all over . . . for roughly fifteen (15) hours which constitutes deliberate indifference in violation of the Eighth (8th) Amendment. . . ."[3] (ECF No. 22, at 11.)

Claim Two:   "On December 7, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering of the obvious OC chemical agents burning his entire body, that infected the big obvious cuts across his back (roughly five (5) cuts approx. 6 inches long . . .) that were actively bleeding for roughly 3 days and continuing to burn physically for 11 days locked in his cell (3A-22) and constitutes deliberate indifference in violation of the 8th Amendment . . ." (ECF No. 22, at 11–12.)

Claim Three:   "On December 7, 2022, [Defendant Richardson] acted w/ negligence by deploying OC chemical agents on Carter against medical orders not to use chemicals because Carter suffered a serious respiratory disorder of severe asthma and caused Carter to have a life-threatening asthma attack . . . which constitutes a state law claim of negligence . . . ." (ECF No. 22, at 12.)

Claim Four:   "On December 7, 2022, [Defendant Richardson] acted w/ negligence by failing to submit Carter's emergency grievance" pursuant to VDOC policy "requesting immediate care to treat the OC chemicals and open wound injuries causing Carter to be subjected to severe burning all over and asthma attacks along w/ infected back wound that left permanent scars and Carter had no help or medical care for 11 days . . . which constitutes a state law claim of negligence." (ECF No. 22, at 12–13.)

Carter asks for monetary and declaratory relief. (ECF No. 22, at 13–15.)

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Defendant Richardson moved to dismiss. By Memorandum Opinion and Order entered on July 7, 2025, the Court granted the Motion to Dismiss with respect to Claims One, Three, and Four. *Carter v. Richardson*, No. 3:23cv808, 2025 WL 1869580, at *10 (E.D. Va. July 7, 2025.) With respect to Claim Two, the Court explained as follows:

> In Claim Two, Carter argues that "[o]n December 7, 2022, [Defendant Richardson] knowingly denied medical care treatment to Carter suffering of the obvious OC chemical agents burning his entire body, that infected the big obvious cuts across his back (roughly five (5) cuts approx. 6 inches long . . .) that were actively bleeding for roughly 3 days and continuing to burn physically for 11 days locked in his cell (3A-22) and constitutes deliberate indifference in violation of the 8th Amendment . . ." (ECF No. 22, at 11–12.) Thus, in his statement of his "Legal Claims," Carter specifically limited his claim to the fact that Defendant Richardson denied Carter medical care after the decontamination shower.[4]
>
> As background, Carter admits that on December 7, 2022, he engaged in a "physical fist fight" with another inmate, and it was broken up by Defendant Richardson and other officers by the deployment of chemical agents on his "right eye, cheek, and forehead." (ECF No. 22, at 4–5.) Defendant Richardson then directed officers to take Carter to the shower to be decontaminated. (ECF No. 22, at 5.) Carter contends that while he was in the decontamination shower, the water was hot, and according to Carter, chemicals became airborne causing him to have

> ---
>
> [4] Claim Two does not allege that Defendant Richardson violated his constitutional rights with respect to the use of pepper spray or the use of the decontamination shower where Carter contends that he had an asthma attack. Rather, Carter's claim about the use of a chemical agent and collapsing in the shower from an asthma attack is only alleged as a claim of state law negligence in Claim Three. (*See* ECF No. 22, at 12.)
>
> Moreover, Carter complains that he was taken to a hot shower by unidentified officers when he wanted a cold shower. Defendant Richardson construes Carter to argue that Defendant Richardson was deliberately indifferent to his serious medical needs because Carter wanted to be placed in a cold shower, not a hot shower. But this is not the claim that Carter raised. *Cf. Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021) (explaining that as Plaintiff, Carter "is the master of his complaint" and "determines the claims . . . to bring" (citations omitted)); *Wyatt v. Sussex Surry, LLC*, 482 F. Supp. 2d 740, 744 (E.D. Va. 2007) (explaining that "[t]he well-pleaded complaint rule limits the district court's inquiry to the face of the complaint, recognizing that the plaintiff is the 'master of the complaint.'" (quoting *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004)). Even if Defendant Richardson was involved in the decision to place Carter in a hot shower, he fails to allege facts that Defendant Richardson knew of and disregarded a serious risk of harm by placing Carter in a hot shower to decontaminate.

3

an asthma attack and he "los[t] conscious." (ECF No. 22, at 6.)[5]  Carter indicates that after the decontamination shower, Defendant Richardson and another deputy instructed him to get up and took him back to his cell. (ECF No. 1, at 5.) Pertinent to Claim Two, Defendant Richardson then denied him medical care for the "obvious OC chemical agents burning his entire body that infected the big obvious open cuts across his back . . . that were actively bleeding . . . ." (ECF No. 22, at 12.)

Carter also contends that he submitted an emergency grievance, presumably after he was put back in his cell, and "[Defendant Richardson] signed the receipt and this way Carter was assured to get medical care [per VDOC policy]." (ECF No. 22, at 8–9.)  From Carter's allegations, Defendant Richardson's only involvement after the decontamination shower was to place Carter back in his cell and taking and receipting the emergency grievance.[6]

At this juncture, the Court is constrained to find that Carter has adequately alleged facts that would suggest that Defendant Richardson knew of and disregarded a substantial risk of serious harm to Carter by not obtaining immediate

---

[5] Defendant concedes that Carter having a severe asthma attack to the point that he allegedly collapsed on the floor could objectively be a serious medical condition.  However, that is not what Carter raises in the Claim Two.

[6] Carter's claim about the emergency grievance is the subject of Claim Four and only alleges negligence. (*See* ECF No. 1 2–13.)  While Carter faults Defendant Richardson because he was not seen by medical for eleven days, Carter fails to allege any facts indicating that Defendant Richardson was personally involved in any purported denial of medical care, beyond placing Carter back in his cell on the date of the fight.

At most, Carter contends that unidentified "medical care staff" stated that "Lt. never told them he used force, or that Carter needed to be treated for his open, obvious wounds." (ECF No. 22, at 10.) Carter claims that he "filed a host of written medical request (Dec. 7th, Dec. 8th, 2022) and made verbal requests to be treated immediately for the burning pains of OC chemicals, and the inflamed open flesh wounds contaminated w/ OC chemicals over his back and his knee . . . ." (ECF No. 22, at 10.) However, Carter fails to allege facts that Defendant Richardson was personally involved at this point.  Carter's suggestion that Defendant Richardson caused him to not receive medical care for eleven days "is no more than [a] conclusion[], [and is] not entitled to the assumption of truth.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (explain[ing] that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus, to the extent that Carter intends to allege an Eighth Amendment claim for denial of medical care beyond returning Carter to his cell without medical care, he fails to state a claim for relief.

> medical care for Carter for the cuts on his back and the residual burning from chemical agents after being removed from the contamination shower. Accordingly, the Motion to Dismiss will be DENIED with respect to Claim Two.

*Id.* at \*6–7 (footnote numbers altered from original) (final alteration added). Thus, only Claim Two remains for disposition. And, as explained in the July 7, 2025 Memorandum Order, the only issue before the Court is whether Defendant Richardson knew of and disregarded a substantial risk of serious harm to Carter by not obtaining immediate medical care for Carter after removing him from the decontamination shower.[7]

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

---

[7] Carter filed a Motion for Reconsideration of the Court's dismissal of the rest of his claims. As discussed in Part V, that motion will be DENIED.

5

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448).

In support of his Motion for Summary Judgment, Defendant Richardson submits grievance materials relevant to Carter's claim. (ECF No. 43.) Defendant Richardson also supplied the Court with his body camera footage of the actions alleged in Claim Two.

At this stage, the Court is tasked with assessing whether Carter "has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Carter has not filed any evidence in support of his Response in Opposition. However, attached to his Motion for Summary Judgment that was denied on July 7, 2025, Carter provided grievance materials that the Court considers where relevant. (ECF No. 31-1 through ECF No. 31-6.) Carter also filed a Declaration in support of his Motion for Reconsideration. (ECF No. 59.) However, nothing in the Declaration bears on the remaining Claim Two.[8]

---

[8] Carter also failed to swear under penalty of perjury to his Complaint. Moreover, his Complaint does not contain a jurat, but instead was merely acknowledged before a notary. An acknowledgement is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn as to the truth of the

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Carter.

### III. Summary of Relevant Facts

#### A. Compliance with E.D.Va. Local Rule 56(B)

The majority of the facts that Defendant Richardson cites as "undisputed" come from Carter's allegations in his unsworn Complaint. (*See* ECF No. 42, at 2.) However, these allegedly "undisputed" facts are indeed disputed by Defendant Richardson. For example, citing to the Court's Memorandum Opinion that cites Carter's Complaint, Defendant Richardson states that Carter was "in pain and burning requesting for his cut wounds all over his back . . . to Defendant . . . to be treated and prevent further harm, but Defendant denied to get him medical care." (ECF No. 42 ¶ 11.) Later, Defendant Richardson, citing grievance materials, contends that Carter never complained about "the big obvious cuts across his back." (ECF No. 42 ¶¶ 14–15.) Thus, Defendant Richardson clearly disputes whether Carter had obvious wounds on his back that put Defendant Richardson on notice of his need for medical care. Defendant Richardson's Motion for Summary Judgment fails to comport with E.D. Va. Local Rule 56(B).[9]

---

contents of the document. In an acknowledgement, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that jurat uses words "subscribed and sworn" and demonstrates an oath was rendered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n. 6 (E.D.Va. Feb. 3, 2009). Accordingly, Carter's Complaint fails to constitute admissible evidence.

[9] Local Rule 56(B) provides:

> **(B) Summary Judgment – Listing Of Undisputed Facts:** Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party *contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed.* A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for

Nevertheless, the Court has determined that even if Carter had obvious cuts on his back, Defendant Richardson was not deliberately indifferent to Carter's serious medical needs.

## B. Undisputed Allegations and Facts

The parties do not dispute the following allegations. Carter is an inmate who was formerly incarcerated in the Virginia Department of Corrections as Sussex I State Prison ("Sussex") and is currently held in the Newport News City Jail. Defendant Richardson was employed as a Lieutenant at Sussex. On December 7, 2022, Carter engaged in a "physical fist fight" with another inmate, and it was broken up by Defendant Richardson and other officers by the deployment of chemical agents on his "right eye, cheek, and forehead." (ECF No. 22, at 4–5.) Defendant Richardson then directed officers to take Carter to the shower to be decontaminated. (ECF No. 22, at 5.) Carter indicates that after the decontamination shower, Defendant Richardson and another deputy instructed him to get up and took him back to his cell. (ECF No. 1, at 5.) Defendant Richardson then put Carter in his cell without obtaining medical care for Carter.

The body worn camera footage from before Defendant Richardson employed OC spray shows a clear image of Carter's back and there are no apparent cuts. The Court also discerns no apparent cuts in the footage from after the decontamination shower.

In the Written Complaint submitted on December 7, 2022, Carter complained that Defendant Richardson sprayed OC chemicals "in the pupil of [his] eye," and that his medical file

---

summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added).

stated he could not be sprayed with OC chemicals.[10]  (ECF No. 43, at 5.)  In his December 28, 2022 Regular Grievance complaining about Defendant Richardson's actions on December 7, 2022, Carter stated:  "I wasn't given medical attention after OC chemicals were used in the pupil of my eye."  (ECF No. 43, at 3.)

In his Level II Appeal, filed on March 23, 2023, Carter, for the first time, stated that he "reporte[d his] open cuts w/ OC Agents in there."  (ECF No. 31-1, at 1.)  Carter continues that he had "no medical treatment for OC spray, infecting my roughly 8-9 open cuts over my back, even after utilizing the emergency grievance process . . . that [he] suffered for days w/ no medical treatment."  (ECF No. 31-1, at 1–2.)

With respect to any request for medical care after the December 7, 2022 incident, on December 13, 2022, Carter submitted a Facility Request that asked to have his "stab wounds treated . . . they are open flesh wounds . . . and I had OC chemicals used on me and they are painful b/c OC chemicals got into my cuts and may be infected."  (ECF No. 31-5, at 1.)

### IV.  Analysis

#### A.  Eighth Amendment Principles

To survive summary judgment, an inmate must demonstrate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'"  *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  With respect to the denial of adequate medical care, "a prisoner must [demonstrate] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v.*

---

[10] The response to the Written Complaint reflects that this was not true.  Rather, after a check with the medical department, an officer responded that "there [was] nothing in [Carter's] medical file that prevents the use of chemical agents on [Carter]."  (ECF No. 43, at 5.)

*Gamble*, 429 U.S. 97, 106 (1976).  A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

In the context of delayed medical care, the objective-prong analysis does not end there. "[M]ere delay" in medical treatment, without more, is not deliberate indifference to a serious medical need. *Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022).  Rather, in addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008).  "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those

general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Although it is undisputed that Defendant Richardson did not obtain immediate medical care for Carter before placing him back in his cell, Carter fails to demonstrate that Defendant Richardson was deliberately indifferent to Carter's serious medical needs. According to Carter, he had cuts on his back that hurt from the OC spray and he self-diagnosed that he needed immediate care. However, the body worn camera footage from before Defendant Richardson employed OC spray shows a clear image of Carter's back and there are no apparent cuts. The Court also discerns no apparent cuts in the footage from after the decontamination shower.[11] Even if Carter had cuts on his back, Defendant Richardson was aware that Carter had been in a decontamination shower prior to being placed into his cell and any cuts would have been extensively flushed with water. As explained previously, Defendant Richardson's only

---

[11] Even if Carter had cuts on his back that did not show up on video, such cuts were doubtfully a sufficiently serious medical condition to satisfy the objective prong. *See Abernathy v. Anderson*, 984 F.3d 1, 8–9 (1st Cir. 2020) (concluding that claims of "cuts, bruises, swelling, and some bleeding" as a result of an altercation were not a serious medical need); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (affirming finding of "no serious medical needs" where pretrial detainee had cut over one eye, a quarter-inch piece of glass in palm, and was required to wait fourteen hours before being given treatment); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 679 (W.D. Va. 2001) (finding that three cuts on the wrist, which were bleeding, and two sets of marks from a stun gun were not serious medical needs, even though plaintiff did not get treatment until days later and the injuries left permanent scars).

involvement with any alleged denial of medical care was to place Carter back in his cell on December 7, 2022. Carter fails to show that Defendant Richardson actually knew of and disregarded an excessive risk to Carter's health or safety at that time.

The record is also not clear about when Carter asked for, and received, medical care for his cuts and what medical care he received in the end, if any. Carter states, but not under oath, that he submitted "a host of written medical requests (December 7 and 8, 2022) and made verbal request to be treated immediately." (ECF No. 22, at 10.) Carter alleges that he "suffered roughly eleven (11) days . . . w/o medical care." (ECF No. 22, at 10.) However, Carter alleges no involvement of Defendant Richardson at this point. Carter does not allege to whom these additional requests for medical care were directed, but he certainly does not allege that Defendant Richardson was involved at that juncture. Tellingly, Carter puts forth no evidence that he complained about any alleged open wounds on his back until a Facility Request on December 13, 2022, six days after Defendant Richardson's involvement. Carter's Written Complaint drafted on December 7, 2022, stated nothing about the denial of medical care for open wounds on his back and instead complained only about OC chemicals sprayed in his pupil. The record fails to contain admissible evidence that Carter was suffering from obvious, open cuts, that required immediate medical care, as he suggests, and that Defendant Richardson knew of and disregarded that risk.

More importantly, Carter fails to show, as he must, that any delay in receipt of medical care resulted in *"resulted* in substantial harm." *Mata*, 427 F.3d at 751 (citation omitted) (emphasis added). Carter fails to show "lifelong handicap, permanent loss, or considerable pain." *Shabazz*, 2012 WL 442270, at *5. First, the record fails to reflect that Carter had any cuts on his back, much less large cuts. Nevertheless, having cuts from a fight and the contact of OC chemicals on his skin would cause some temporary pain and discomfort. However, Carter fails

12

to demonstrate that any delay in receipt of medical treatment resulted in substantial harm. Carter even fails to identify when he received medical care and what that medical care involved.[12] At most, Carter alleges that he is left "w/ huge scabs and scars that are now permanent." (ECF No. 22, at 10.) Scabs would be expected from cuts and would suggest that Carter was healing. Carter's failure to show that the delay in receipt of medical care resulted in sufficiently substantial harm is entirely fatal to his claim. Accordingly, Claim Two will be DISMISSED.

## V. Carter's Motion for Reconsideration

After the July 7, 2025 Memorandum Opinion dismissing Claims One, Three, and Four, Carter filed a Motion for Reconsideration of Claims Previously Dismissed, Claims 1 and 3. (ECF No. 57.) If a motion seeks reconsideration of an order before the entry of final judgment, the motion is governed by Rule 54(b). Accordingly, Carter's motion will be construed as a motion under Federal Rule of Civil Procedure 54(b) ("Rule 54(b) Motion".) That rule provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). A district court retains the discretion to reconsider or modify a grant of a partially dispositive motion at any time prior to the entry of final judgment. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); Fed. R. Civ. P. 54(b)). Nevertheless, a court must exercise its discretion to consider such motions sparingly in order to

---

[12] The fact that Carter did not receive medical care for eleven days, even after several requests from Carter about his need for medical care, and at that point, his wounds were allegedly scarring and healing, supports an inference that Carter had no serious medical need that required attention, much less immediate attention.

13

avoid an unending motions practice. *See Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001).

Under Rule 54(b), a motion for reconsideration generally should be limited to instances such as

the following:

> [T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *accord United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997). The Fourth

Circuit has indicated that reconsideration is also appropriate where "a subsequent trial produces

substantially different evidence" or "the prior decision was clearly erroneous and would work

manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co.*,

845 F.2d 66, 69 (4th Cir. 1988)). The courts do not entertain motions to reconsider which ask

the Court to, "rethink what the Court had already thought through--rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101.

Carter does not explicitly address any of the above recognized grounds for relief in his

Rule 54(b) Motion. With respect to Claim One, Carter contends that the Court misinterpreted

Defendant Richardson asking whether Carter had COVID-19. (ECF No. 58, at 3.) Carter

contends that Defendant Richardson was making a joke, not asking him if he had COVID-19,

and because Carter was sneezing and coughing, Defendant Richardson "humiliated Carter."

(ECF No. 58, at 3.) In essence, Carter contends that because Defendant Richardson made a joke

about Carter having COVID-19, it meant Defendant Richardson was aware from Carter's

symptoms that he needed medical care but ignored him. Carter shows no error in the Court's

prior decision. In the July 7, 2025 Memorandum Opinion, the Court explained as follows:

14

> Carter fails to allege facts that would plausibly suggest that he suffered a serious medical need at the time. Indeed, Carter alleges no lasting harm from the incident on December 6, 2022. At best, he contends that he "never was able to receive any form of treatment for the OC chemical agents he was exposed to in HU-3A that day and had to suffer for hours until the ventilation system had filtered out the toxic airborne agent that night . . . ." (ECF No. 22, at 4.) Carter fails to satisfy the objective prong of the inquiry, that he was suffering an objectively serious medical need, and for this reason alone Claim One can be dismissed.
>
> Moreover, Carter fails to allege facts indicating that Defendant Richardson knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The chemical spray was not used on Carter or in Carter's cell but was deployed four cells over. According to Carter, in response to Carter's physical symptoms and complaints, Defendant Richardson asked Carter if he had COVID. (*Id.*) Richardson's question about whether Carter had COVID, showed that he did not subjectively recognize a substantial risk of harm to Carter. Moreover, Carter fails to allege facts that would show that Defendant Richardson knew that Carter suffered from asthma, or that based on his outward symptoms, that Carter had a serious medical need. Rather, Defendant Richardson could reasonably believe that Carter's reaction was from the chemical agents working their way out through the ventilation system. Thus, Carter fails to allege that Defendant Richardson knew of and disregarded a substantial risk of harm to Carter on December 6, 2022. Accordingly, Carter fails to allege an Eighth Amendment claim and Claim One will be DISMISSED WITH PREJUDICE.

*Carter*, 2025 WL 1869580, at *6.

Carter fails to identify any error in the Court's previous conclusion. The Court never suggested that Defendant Richardson asked if Carter had COVID-19 as a serious question, or in jest, and the difference is immaterial. The Court first concluded that Carter alleged no objectively serious medical need and also alleged no lasting harm.[13] In his Rule 54(b) Motion, Carter again identifies no objectively serious medical need and no lasting harm. This is fatal to his claim. Here, Carter simply asks the Court "rethink what the Court had already thought through--rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101. That is not the purpose of Rule 54(b). Carter shows no error in the Court's dismissal of Claim One.

---

[13] Carter argues that the body camera video shows that Carter was coughing and sneezing and Defendant Richardson's comment about COVID-19 was in jest. The Court already considered these allegations as true.

Second, Carter asks the Court to reconsider its conclusion with respect to Claim Three. In Claim Three, Carter alleged that: "On December 7, 2022, [Defendant Richardson] acted w/ negligence by deploying OC chemical agents on Carter against medical orders not to use chemicals because Carter suffered a serious respiratory disorder of severe asthma and caused Carter to have a life-threatening asthma attack . . . which constitutes a state law claim of negligence . . . ." (ECF No. 22, at 12.)  In his Rule 54(b) Motion, Carter contends that his Complaint "specifically showed that Lt Richardson . . knew of my no OC chemical agents can be used order since 2018." (ECF No. 58, at 7.)  Carter contends that this allegation shows that Defendant Richardson was negligent and the Court erred in concluding that Carter had not made a prima facie showing of negligence.

In its dismissal of Claim Three, the Court explained as follows:

> With respect to Claim Three, Defendant Richardson's use of OC chemical spray resulted directly from Carter's involvement in a physical fight with another inmate. Carter fails to allege any facts that would plausibly suggest that Defendant Richardson had a legal duty toward Carter that he breached by using the OC chemical spray to stop a violent fight. Carter fails to plausibly allege that Defendant Richardson was aware that Carter had asthma or that he would have an asthma attack from being sprayed with OC chemicals when he deployed the spray. Rather, Carter cannot show that Defendant Richardson failed to use the degree of care that a reasonable person would exercise under like circumstances to avoid injury to Carter. *See Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003). Instead, any reasonable person would have used OC chemicals to break up a violent fight between inmates that involved a knife or other weapon. Therefore, Carter fails to allege that Defendant Richardson breached a legal duty to Carter. In sum, Carter does not make out a claim that Defendant Richardson was negligent. Accordingly, Claim Three will be DISMISSED WITH PREJUDICE.

*Carter*, 2025 WL 1869580, at *7–8. Plainly stated, Carter fails to show any error in this conclusion.[14]  Carter's Rule 54(b) Motion (ECF No. 57) will be DENIED.

---

[14] The evidence before the Court on summary judgment also undermines Carter's primary contention that Defendant Richardson knew that pepper spray could not be used on Carter. In response to a Written Complaint where Carter stated that he had a no-pepper spray order, the

## VI.   CONCLUSION

Defendant Richardson's Motion for Summary Judgment (ECF No. 41) will be GRANTED.  The Rule 54(b) Motion (ECF No. 57) will be DENIED.  The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).[15]

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 5/19/26
Richmond, Virginia

_____ /s/
M. Hannah Lauck
Chief United States District Judge

---

medical department explained that "there [was] nothing in [Carter's] medical file that prevents the use of chemical agents on [Carter]." (ECF No. 43, at 5.)

Carter also again contends that the video shows that he told Defendant Richardson that he had a no-pepper-spray order.  Defendant Richardson was not required to believe Carter's self-serving statement.  Moreover, that fails to change the conclusion that Defendant Richardson was not negligent in his actions.

[15] Claims One, Three, and Four were dismissed with prejudice for failure to state a claim. Although the Court generously permitted Claim Two to survive the Court's screening obligations and the Motion to Dismiss, even on summary judgment, it is evident that Claim Two entirely lacks merit, is frivolous, and malicious.

17